UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.
                                     Case No. 05-CR-80369
                                       HON. GEORGE CARAM STEEH

D-3  RICARDO TOLLIVER,

    Defendant.

_____/

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS COUNTS 4 AND 6 (# 242)

Defendant Ricardo Tolliver moves for dismissal of Counts Four and Six of an October 29, 2008 Superceding Information charging him under 18 U.S.C. § 924(c) with using a firearm in relation to a drug trafficking crime and possessing a firearm in furtherance of a drug trafficking crime, and aiding and abetting these charged crimes, 18 U.S.C. § 2. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

**I. Background**

In addition to the § 924(c) charges alleged in Counts Four and Six, Tolliver is charged in the Superseding Information with one count of possession and transportation of sixteen firearms with obliterated serial numbers (Count One), 18 U.S.C. §§ 922(k) and 2, one count of conspiracy to possess marijuana with intent to distribute (Count Two), 21 U.S.C. §§ 846 and 841(a)(1), two counts of possession of marijuana with intent to distribute (Counts Three and Five), 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count of

unlawfully transporting firearms in interstate and foreign commerce (Count Seven), 18 U.S.C. §§ 922(a)(1)(A) and 2.  The charges against Tolliver and his co-defendants arise from an alleged conspiracy to illegally purchase firearms in the United States, obliterate the serial numbers in the United States, transport the firearms to Canada, exchange the firearms for marijuana in Canada, and ship the marijuana back to the United States through Detroit.  Tolliver moves to dismiss Counts Four and Six, which read:

### COUNT FOUR

\* \* \*

On or about early February 2005 and ending on or about February 11, 2005, in the Eastern District of Michigan, Southern Division and elsewhere, defendant RICCARDO TOLLIVER did use and carry a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, said trafficking being possession with intent to distribute marijuana as alleged in Count Three of this Information, and he and other individuals including Lamarcus Jones and Anthony Lightfoot, did aid and abet each other in the commission of this offense; all in violation of Title 18, United States Code, Section 924(c)(1) and Section 2 -AND ALSO- defendant RICCARDO TOLLIVER did possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, said drug trafficking crime being possession with intent to distribute marijuana as alleged in Count Three of this Information, and he and other individuals including Lamarcus Jones and Anthony Lightfoot, did aid and abet each other in the commission of this offense; all in violation of Title 18, United States Code, Section 924(c)(1) and Section 2.

\* \* \*

### COUNT SIX

\* \* \*

On or about March 2005, in the Eastern District of Michigan, Southern Division and elsewhere, defendant RICCARDO TOLLIVER did use and carry a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, said trafficking being possession with intent to distribute marijuana as alleged in Count Five of this Information, and he and other individuals including Lamarcus Jones, Phillip Walls, Shamika Jennings, and Rawa Akram did aid and abet each other in the commission of this offense; all in violation of Title 18, United States Code, Section 924(c)(1) and Section 2 -AND ALSO- defendant RICCARDO TOLLIVER did possess a firearm in furtherance of a drug trafficking crime for

which he may be prosecuted in a court of the United States, said drug trafficking crime being possession with intent to distribute marijuana as alleged in Count Five of this Information, and he and other individuals including Lamarcus Jones, Phillip Walls, Shamika Jennings, and Rawa Akram did aid and abet each other in the commission of this offense; all in violation of Title 18, United States Code, Section 924(c)(1) and Section 2.

October 29, 2008 Superceding Information, at 4-6.

On March 10, 2008, the court denied Tolliver's earlier motion for an order requiring the Government to elect a charge with respect to four similar 18 U.S.C. §§ 924(c) counts charged in a November 26, 2007 Fourth Superceding Indictment. The court recognized that use of a firearm during and in relation to a drug trafficking crime, and possession of a firearm during and in relation to a drug trafficking crime, are two separate and distinct offenses under § 924(c), United States v. Combs, 369 F.3d 925, 933 (6th Cir. 2004), and that a § 924(c) charge of both "use" of a firearm "during and in relation to" a drug trafficking crime, and "possession" of a firearm "in furtherance of" a drug trafficking crime, is duplicitous, United States v. Savoires, 430 F.3d 376, 379-380 (6th Cir. 2005). March 10, 2008 Order, at 2. The court denied the motion, however, while recognizing that the use of appropriate jury instructions and a special verdict form at trial cures the risk of harm. United States v. Robinson, 651 F.2d 1188, 1194 (6th Cir. 1981). March 10, 2008 Order, at 3.

On June 6, 2008, the court denied Tolliver's earlier motion to dismiss the four § 924(c) charges alleged in the November 26, 2007 Fourth Superceding Indictment, finding that Tolliver could be found guilty under the "use" prong of § 924(c) if the Government proves at trial that Tolliver received drugs in exchange for firearms, Smith v. United States, 508 U.S. 223, 241 (1993), and that Tolliver could be found guilty under the "possession" prong of § 924(c) if the Government proves at trial that Tolliver received firearms in exchange for drugs, United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005). June

6, 2008 Order, at 3-4. In denying the motion to dismiss, this court reasoned:

> . . . The Government has expressed its expectation to show that Tolliver served as a middle-man, intending that one party walk away with guns and the other party with drugs. Unlike cases involving a fact based guilty plea, the facts here remain to be developed at trial. At best, Tolliver's motion is premature. See Fed. R. Crim. P. 29. Tolliver's argument that the firearms were merely present and incidental to the delivery of marijuana is conclusionary, and not well taken.

June 6, 2008 Order, at 4.

## II. Motion to Dismiss Counts Four and Six

Tolliver now moves to dismiss the § 924(c) charges as alleged in Counts Four and Six of the November 26, 2007 Fourth Superceding Indictment, proffering stipulated facts underlying the two charges. Tolliver reiterates the legal arguments he advanced in his prior motion to dismiss, and asserts that the law as applied to the stipulated facts warrants dismissal of Counts Four and Six because he neither "used" or "possessed" a firearm in furtherance of or in relation to a drug trafficking crime as contemplated under § 924(c).

### A. "Use" and "Possession" under § 924(c)(1)(A)

18 U.S.C. § 924(c) provides in pertinent part:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, <u>uses</u> or carries <u>a firearm</u>, <u>or</u> who, in furtherance of any such crime, <u>possesses a firearm</u>, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

4

(emphasis added).

"[A] criminal who trades his firearm for drugs 'uses' it during and in relation to a drug trafficking offense within the meaning of § 924(c)(1)." Watson v. United States, 128 S. Ct. 579, 581 (2007) (quoting Smith, 508 U.S. at 241). Conversely, "a person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in a trade for drugs." Watson, 128 S. Ct. at 586. Further, mere possession of a firearm near the scene of drug trafficking does not constitute "use": "§ 924(c)(1) requires evidence sufficient to show active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Id. at 581-582 (quoting Bailey v. United States, 516 U.S. 137, 143 (1995) (emphasis in original)). "'[B]artering' one's firearm, as in Smith, [is] a sufficiently active employment of it to constitute 'use.'" Frederick, 406 F.3d at 763 (citing Bailey, 516 U.S. at 147-148). "[A]cquisition of a firearm in exchange for drugs is a sufficient 'specific nexus' between the drugs and the guns to constitute possession 'in furtherance of' the drug sale." Id. at 764.

Aiding and abetting requires proof of: (1) an act that contributes to commission of the charged crime; and (2) the intent to aid in the commission of the crime. United States v. Gardner, 488 F.3d 700, 714 (6th Cir. 2007). See also United States v. Robinson, 389 F.3d 582, 591 (6th Cir. 2004) (stating that "[i]n order ro sustain a conviction of aiding and abetting the use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c), the government must prove that the defendant both associated and participated in the use of the firearm in connection with the underlying crime." (internal quotation and citation omitted)). One district court has held that a person who traded two pounds of marijuana with an actual firearms dealer for two firearms could not be found guilty of aiding and abetting a violation of the "use" prong of § 924(c)(1), even though the firearms dealer himself had committed the "use" offense. United States v. Blunt, 540 F.Supp.2d 664, 664-

666 (E.D. Va. 2008). The district court reasoned that Watson "never mentioned aiding and abetting liability as an exception to its holding" that a "person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in a trade for drugs." Blunt, 540 F.Supp.2d at 666.

### B. Application to Stipulated Facts

With respect to both Count Four and Count Six, the parties agree that, between January and May 2005, defendant Tolliver received requests from "Canadian Marijuana Traffickers" for firearms.[1] "The Canadian Marijuana Traffickers had high-quality marijuana which Tolliver used, in whole or in part, as barter for firearms which Tolliver would secure from the United States for the Canadian Marijuana Traffickers." Stipulated Facts, ¶ 1. "Tolliver engaged in this activity in expectation of cash payment/profit from the Canadian Marijuana Traffickers." Id., ¶ 4. "Tolliver knew the Canadian Marijuana Traffickers but Lamarcus Jones and the other co-defendants did not." Id. at ¶ 1.

### i. Count Four

According to the stipulated facts, defendant Tolliver sent money to co-defendant Lamarcus Jones in early February 2005 with instructions to buy handguns and remove their serial numbers. Tolliver also sent money to Jones to offset expenses incurred in transporting the guns from the United States to Ontario, Canada. Co-defendant Lightfoot rented a Ford Explorer, and stored sixteen handguns in the spare tire. At Tolliver's direction, Jones, Lightfoot, and two women transported the handguns from the United States, first to a particular grocery store parking lot in Windsor, Ontario, and then to a department store parking lot in Toronto, Ontario. Once the Explorer arrived in Toronto, Tolliver paid for the Explorer's spare tire to be removed from the vehicle; the spare tire contained the sixteen handguns. Tolliver then placed a different spare tire, containing

---

[1] The Stipulated Facts, titled "PROOFS IN SUPPORT OF THE TWO 924(C) CHARGES AGAINST TOLLIVER," are attached to this Order.

multiple pounds of marijuana, into the the Explorer. Tolliver then took possession of the sixteen handguns inside the spare tire that he retained, and transported the guns to the Canadian Marijuana Traffickers.

Tolliver purchased sixteen handguns, through Jones, and traded these handguns for marijuana. Tolliver took constructive possession of the handguns by having the power and intent to exercise control over the guns both directly, and through Jones and Lightfoot. See United States v. Arnold, 410 F.3d 895, 905 (6th Cir. 2005) (quoting United States v. Craven, 478 F.2d 1329, 1333 (6th Cir. 1973)). Tolliver also took actual possession of the handguns in Toronto, Ontario, and thereafter delivered the weapons in his possession to the Canadian Marijuana Traffickers. Id. Tolliver's purchase of sixteen handguns, possession of the handguns, and ultimate bartering of the handguns in exchange for marijuana, constituted active employment of the firearms, and thus "use" of the firearms "during and in relation to" a drug trafficking crime under § 924(c)(1). Watson, 128 S.Ct. at 581-582; Frederick, 406 F.3d at 763.

Tolliver also committed acts on behalf of the Canadian Marijuana Traffickers with the intent to aid the Trafficker's in their commission of the § 924(c)(1) offense of "possession" of a firearm "in furtherance of" a drug trafficking crime. Gardner, 488 F.3d at 714. The Traffickers' acquisition of the sixteen handguns in exchange for the marijuana provided to Tolliver constituted "possession" of firearms "in furtherance of" a drug trafficking crime. Frederick, 406 F.3d at 763. Tolliver aided and abetted the Canadian Marijuana Traffickers' "possession" of the firearms by himself taking actual possession of the firearms in Toronto after the drugs were delivered to Jones for transport back to the United States. Through Tolliver's acts of actually possessing the handguns and transporting them to the Traffickers after the drug exchange was completed in the Toronto parking lot, the Traffickers, through Tolliver, took constructive possession of the firearms. Arnold, 410 F.3d

at 905.  Unlike the situation in United States v. Lawrence, 308 F.3d 623, 630 (6th Cir. 2002), relied upon by Tolliver, the stipulated facts show that Tolliver actually possessed the handguns in Toronto to advance the illegalities of the Trafficker's unlawful "possession" of the firearms under § 924(c)(1).  Tolliver's actual possession of the firearms on behalf of the Traffickers constituted an active employment of the firearms, a "use" that made the firearms an operative factor in relation to the predicate drug trafficking offense.  Frederick, 406 F.3d at 763-764.

Blunt is distinguishable.  In Blunt, the stipulated facts were "that defendant distributed approximately one pound of marijuana and received two firearms as payment for the marijuana."  Blunt, 540 F.Supp.2d at 665.  The district court rejected the government's theory that the defendant who received the firearms could be convicted as an aider and abetter of the firearms dealer who was guilty of a § 924(c)(1) "use" offense of trading firearms for marijuana.  Id. at 665.  Here, Tolliver's direct bartering of firearms for drugs constituted his "use" offense under § 924(c)(1).  Watson, 128 S.Ct. at 581-582; Frederick, 406 F.3d at 763.  The Watson Court's silence with respect to the viability of a charge of aiding and abetting a "use" offense is unpersuasive relative to the aiding and abetting of a "possession" offense.  See Blunt, 540 F.Supp.2d at 665.  Further, as the Government indicates, the stipulated facts present more than a simple exchange of guns for marijuana, with Tolliver both "using" the firearms he purchased in trade for marijuana, then aiding and abetting the Canadian Drug Traffickers' "possession" of the guns by taking actual possession of the weapons and delivering them to the Traffickers after the marijuana had been delivered.  On the particular stipulated facts of this case, Tolliver may be found guilty of aiding and abetting the Trafficker's unlawful "possession" of the firearms under § 924(c)(1).  Tolliver is not entitled to dismissal of either the § 924(c)(1) "use" or "possession" offenses as charged in Count Four.

### ii. Count Six

Again according to the stipulated facts, defendant Tolliver called Jones in March 2005 on behalf of Canadian Drug Trafficker Rawa Akram. "Akram informed Tolliver that he (Akram) had seven (7) pounds of marijuana, and Tolliver confirmed that the marijuana would be traded with Jones for the seven firearms, which firearms would be delivered to Akram." Stipulated Facts, ¶ 15. Tolliver instructed Jones to purchase seven handguns, and wired Jones the money to buy the guns in the United States. "A portion of the marijuana was to be Jones' profit." Id. Tolliver coordinated with one Shamika Jemmings, who picked up the marijuana from Akram. Tolliver then instructed Jemmings to transport the marijuana from Ontario, through Detroit, and into Southern Ohio, where she would meet up with Jones. Tolliver provided Jemmings with money to secure a hotel room in Ohio, and directed Jones to meet Jemmings at the hotel. At the hotel, Jemmings gave Jones the keys to the car she was driving, which contained the marijuana. Jones then drove Jemmings to a shopping mall, dropped her off, and drove on to the home of two co-defendants, Phillip and Michelle Walls. Jones left the marijuana at the house, and retrieved the seven guns purchased using Tolliver's money. Jones returned to the mall with the guns, picked up Jemmings, and Jemmings drove the two back to Ontario through Detroit. Tolliver kept in telephone contact with Jemmings and Jones during this return trip, confirming the drugs-for-guns exchange as well as their travel status. Tolliver used this information to provide updates to Akram. Jemmings eventually delivered the firearms to Akram in Ontario "in accordance/conformity with the directions of Akram and Tolliver." Id., ¶ 19.

Tolliver purchased seven handguns, through Jones, and traded these guns for seven pounds of marijuana. Tolliver took constructive possession of the seven weapons by exercising control over the guns through Jones and Jemmings. Arnold, 410 F.3d at 905.

Tolliver's purchase of the handguns, constructive possession of the weapons, and bartering of the handguns in exchange for seven pounds of marijuana constituted active employment of the firearms, and thus "use" of the firearms "during and in relation to" a drug trafficking crime under § 924(c)(1). Watson, 128 S.Ct. at 581-582; Frederick, 406 F.3d at 763.

Tolliver also committed acts on behalf of Akram with the intent to aid Akram in committing the § 924(c)(1) offense of "possession" of a firearm "in furtherance of" a drug trafficking crime. Gardner, 488 F.3d at 714. Akram's acquisition of the seven handguns in exchange for the drugs constituted "possession" of firearms "in furtherance of" a drug trafficking crime. Frederick, 406 F.3d at 763. Tolliver aided and abetted Akram's "possession" of the firearms by exercising constructive possession over the firearms on behalf of Akram, through Jemmings and Jones, after the marijuana had been successfully delivered to Ohio. Arnold, 410 F.3d at 905. Tolliver advanced the illegalities of Akram's § 924(c)(1) "possession" by his involvement with Jemmings, Jones, and Akram in transporting seven firearms from Ohio for delivery to Akram in Ontario. Lawrence, 308 F.3d at 630; Frederick, 406 F.3d at 763-764. As reasoned with respect to Count Four, Blunt is distinguishable. Tolliver both "used" the seven firearms he purchased in trade for marijuana, then aided and abetted Akram's "possession" of the firearms, after the drugs were delivered, by taking constructive possession of the guns and delivering them to Akram through Jemmings and Jones. On these facts, Tolliver may be found guilty of aiding and abetting Akram's unlawful "possession" of the firearms under § 924(c)(1). Tolliver is not entitled to dismissal of either the § 924(c)(1) "use" or "possession" offense as charged in Count Six.

### III. Conclusion

The court agrees with the general propositions advanced by Tolliver that a person who trades firearms for drugs in a simple one-on-one transaction cannot be found liable for

aiding and abetting the other person's § 924(c)(1) "possession" of the firearms, and that a person who trades drugs for firearms in a simple one-on-one transaction cannot be found liable for aiding and abetting the other person's § 924(c)(1) "use" of the firearms. The stipulated facts presented by the parties, however, present more complex transactions. Tolliver is guilty of "using" the firearms he purchased as trade for marijuana. Tolliver is guilty of aiding and abetting the Trafficker's "possession" of firearms by his intentional acts that contributed to the Trafficker's "possession" crime beyond merely supplying the contraband weapons. Accordingly,

Defendant Tolliver's motion to dismiss Counts Four and Six of the October 29, 2008 Superceding Information charging him under 18 U.S.C. §§ 924(c) and 2 with using a firearm in relation to a drug trafficking crime, and possessing a firearm in furtherance of a drug trafficking crime, is hereby DENIED.

SO ORDERED.

Dated: December 3, 2008

                                                    s/George Caram Steeh
                                                    GEORGE CARAM STEEH
                                                    UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 3, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---