UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,
Case No. 2:05-CR-80369-3

v.
Hon. George Caram Steeh

D-3 Riccardo Tolliver,

    Defendant.

_____/

**United States' Response Opposing Defendant's
Motion for Compassionate Release**

Riccardo Tolliver was the leader of a firearms trafficking ring that smuggled 60 crime guns from the Kentucky area across an international border into Canada in exchange for high quality marijuana. He ordered his confederates to scratch off the serial numbers of the guns to make them difficult to trace and more appealing to Canadian criminals. Tolliver orchestrated seven such trips. Some of the guns were recovered at crime scenes in Canada.

During each of those seven trips, Tolliver violated 18 U.S.C. 924(c) by middling the swaps by Canadian drug dealers and Tolliver's

colleagues of guns for drugs. Tolliver could have faced a mammoth sentence: 5 years on the first such trip and 25 consecutive years' incarceration for each of the remaining six trips (consecutive to each other and the drug and other charges). Thus, had the Government sought and been successful at trying Tolliver to the maximum extent possible, Tolliver would have been sentenced to 155 years on the 924(c) counts alone.

The Government showed restraint and reasonableness by not pushing for that huge potential sentence of more than 155 years. Instead, the Government pursued extensive plea negotiations with Tolliver. The intensive negotiations culminated in a Rule 11 Agreement where Tolliver pleaded guilty to just two – not seven – of the guns-for-drugs smuggling trips, and other related charges. (ECF No. 248).

In accordance with the Rule 11 Plea Agreement, this Court sentenced Tolliver to 32 years' incarceration to be followed by a period of supervised release. (ECF No. 278, PageID. 1448 – 1454).

Tolliver moves the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) for the Court to order that his sentence be

reduced to time served.  Tolliver argues that the "stacking" provisions of 924(c) now require an intervening arrest and thus his sentence is too high.  He also argues that he has rehabilitated. Tolliver says these things constitute extraordinary and compelling reasons for early release under 18 U.S.C. § 3582(c)(1)(A).

The government concedes that Tolliver exhausted his administrative remedies.  But his motion should be denied for several reasons.

First, Tolliver has not established the required extraordinary and compelling reasons for early release; both in general and as specifically applied to him.  Given all the circumstances and the maximum penalty he could have faced, his sentence is fair and reasonable.

Second, early release of Tolliver is at odds with Congressional intent.

Third, the sentencing factors of 18 U.S.C. § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—likewise do not support release.

For these reasons, the Court should deny Tolliver's motion.

## Background and Facts

The facts in this case are not in dispute. From November 2004 through May 2005, Riccardo Tolliver orchestrated and executed several international trades of firearms for marijuana. Tolliver, an American citizen living in Canada, worked on behalf of both American drug dealers interested in trading guns for high quality Canadian marijuana, and on behalf of Canadian marijuana traffickers interested in obtaining guns from America. (ECF No. 246: Attachment to Order ¶¶ 1-4; PSR ¶ 16)(Presentence Report/PSR attached as Exhibit 1, sealed). Tolliver organized seven of these international guns-for-drugs trades, resulting in the importation of approximately 60 guns into Canada. (PSR ¶ 18).  Those guns were used in crimes in Canada.  (*Id*.). Each trade generally involved Tolliver arranging for the purchase of firearms in the United States by straw purchasers, the removal of the serial numbers of those firearms, and their importation into Canada in exchange for high-grade Canadian marijuana that was brought into the United States. (PSR ¶¶ 16 - 22).

Two of these trades make up the counts to which Tolliver pleaded guilty and are thus explained in more detail below.

4

A. The February 2005 Crime

In early February 2005, Canadian marijuana traffickers requested that Tolliver obtain handguns with serial numbers scratched off from the United States in exchange for high potency marijuana. (ECF No. 246: Attachment to Order ¶ 5). Tolliver contacted his friend and eventual co-defendant, Lamarcus Jones, in the United States with the proposal. Jones accepted the deal, and received money from Tolliver for the cost of the firearms and other expenses related to the proposed trade. (*Id.* at ¶ 6).

Jones then employed several co-conspirators to prepare the firearms for importation into Canada. First, Jones hired straw purchasers to buy 16 guns with Tolliver's money. (*Id.* at ¶ 7; PSR ¶ 16). Next, two other co-defendants–Philip and Michelle Walls–removed the serial numbers from the firearms using a power tool. (PSR ¶ 17).

Finally, Jones and co-defendant Anthony Lightfoot secreted the firearms inside the spare tire of a rented Ford Explorer. (PSR ¶ 19). Lightfoot drove the Explorer, with the spare tire full of guns, from Kentucky to Canada. Throughout the trip, Tolliver spoke over the

phone with both Lightfoot and Jones about where Lightfoot and Tolliver

would meet in Canada. Eventually, Lightfoot met Tolliver at a

department store parking lot outside of Toronto. (ECF. No. 246:

Attachment to Order ¶¶ 9-10). Tolliver took the spare tire full of guns,

and replaced it with a spare tire full of high grade marijuana provided

by the Canadian marijuana traffickers. (PSR ¶ 19). Tolliver then

delivered the 16 guns to the Canadians. (ECF No. 246: Attachment to

Order ¶ 11).

     For his part, Lightfoot drove back to the United States with the

spare tire full of marijuana. At the Windsor-Detroit border crossing,

however, law enforcement officers stopped Lightfoot and seized the

drugs. (PSR ¶ 19).

## B. The March 2005 Crime

     About one month later, a Canadian marijuana trafficker named

Rawa Akram contacted Tolliver to set up a similar drugs-for-guns swap.

Tolliver again contacted Lamarcus Jones. Jones used straw purchasers

to buy seven firearms with money provided by Tolliver. Akram agreed

to trade seven pounds of high grade marijuana for the seven firearms.
(PSR ¶ 20).

Unlike the February deal, Tolliver organized the March trade to take place in the United States. Co-defendant Shemika Jennings picked up the marijuana from Akram in Canada, and drove to southern Ohio to meet Jones. Prior to the trip, Tolliver instructed Jennings that once she met with Jones in Ohio, she should leave her car with Jones who would take the marijuana and replace it with seven firearms. (PSR ¶ 20). Jennings and Jones followed Tolliver's instructions. Jones dropped Jennings off at a mall, then took her car to carry out the drugs-for-guns swap. (PSR ¶ 20).

With the deal completed, Jennings returned to Canada with the guns. (PSR ¶ 20). Throughout Jennings' time in the United States, Tolliver maintained telephone contact with Jones, Jennings, and Akram. (PSR ¶ 20).

Once in Ontario, Jennings delivered the guns to Akram at a location chosen by Tolliver. (PSR ¶ 20).

C. The Charges, Guilty Plea, and Sentencing

Following a lengthy investigation, the United States indicted Tolliver, Jones, the Walls, and several others on drugs and firearms charges. Among those charges were four counts against Tolliver for using and carrying firearms during and in relation to a drug-trafficking offense, and possessing firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). (ECF No. 195: Fourth Superseding Indictment).

Tolliver and the Government thereafter entered into intensive plea negotiations.  They both stipulated to the facts involved in Tolliver's crimes. The government filed a superseding information– reducing the number of section 924(c) charges from four to two – which still provided for  a lesser but still substantial sentence. Tolliver pleaded guilty pursuant to a conditional plea agreement which contained two section 924(c) counts. (R. 248: Plea Agreement).

In the Presentence Report, the Officer calculated a higher sentencing guideline range than did the parties.  The PSR agreed that the two 924(c) counts mandated a 30 year sentence.  But the Officer disagreed with the calculations of the other (drug and firearms counts).

8

Under the Rule 11 Agreement, those other charges added 33 – 41 months; but the PSR calculated an additional sentence of 108 – 135 months.  (PSR ¶ 101-102).

The district court sentenced Tolliver to a total of 384 months in custody (360 months on the 924(c) counts plus 24 months on the other counts. (ECF No. 278, PageID. 1448 – 1450).  Tolliver's sentence was far less than had the Government successfully pursued 924(c) charges for each of the seven trips Tolliver orchestrated.  And it was also less than the sentence calculated by the Probation Officer.

## Argument

### A.   Tolliver Has Not Shown "Extraordinary and Compelling Reasons" for Compassionate Release.

Compassionate release would be improper for Tolliver.

Resolving the merits of a compassionate-release motion involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Elias*, ___ F.3d ___, No.

20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C.

§ 3582(c)(1)(A). In *Elias*, 2021 WL 50169, at *2, the Sixth Circuit held

that USSG § 1B1.13 is not an "applicable" policy statement for

defendant-initiated motions for compassionate release. Given the Sixth

Circuit's holding in *Elias*, controlling circuit precedent now forecloses

that argument before this Court.

Even so, Tolliver has not satisfied the statutory requirement of

showing that "extraordinary and compelling reasons" to warrant a

sentence reduction. That statutory requirement means that a

defendant's reasons for release must satisfy two strict criteria. 18

U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be

"extraordinary"—meaning exceptional or uncommon. *United States v.*

*Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22,

2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3

(E.D. Mich. Jan. 31, 2020). The reasons must also be "compelling"—

meaning "so great that irreparable harm or injustice would result if the

relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must

establish both criteria to satisfy the statute's eligibility threshold.

Tolliver has satisfied neither.

10

The Government recognizes that this and other courts have granted a reduction in sentence as a result of the changes to the "stacking" provisions of 924(c) under the First Step Act (FSA). *See, e.g., U.S. v. Baker*, Case No. 2:10-cr-20513 (E.D. Mich)(ECF No. 92, PageID. 618); *U.S. v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020). And further that the change in the § 924(c) stacking regime can qualify. (*Id.*). The Government respectfully disagrees for the reasons set forth in this Response. *See also United States v. Martin*, 2020 WL 4464430 at p.3 (S.D. Ill. Aug. 4, 2020).

Plus, even if the Court has the discretion to reduce Tolliver's sentence, an individualized assessment of Tolliver should advise the Court to not exercise its discretion in Tolliver's favor, but should deny his motion.

The Government, despite some of the cases cited above, respectfully argues that Congress' intent was that the changes in 924(c) should not form the basis for compassionate release. Congress did change the penalty for successive violations of § 924(c) in the First Step Act. But that provision was not made retroactive, and does not apply to sentences imposed before the effective date of the First Step Act's

amendment. *United States v. Richardson*, 948 F.3d 733, 745–48 (6th Cir. 2020). If it had been, it would have fit cleanly within § 3582(c)(2), which allows courts to modify sentences when a subsequent statute expressly grants that authority. The First Step Act did exactly that with respect to the crack cocaine penalty reductions of the Fair Sentencing Act. But the First Step Act did not provide for retroactive application of the changes to § 924(c).

Tolliver claims that the changes in the penalty for successive § 924(c) violations qualify as "extraordinary and compelling reasons" warranting release under § 3582(c)(1)(A)(i) even without an express statutory provision of retroactive application. But in light of the express provision in § 3582(c)(1)(B) for retroactive application of statutory changes when expressly authorized by Congress, it would be anomalous to read the "extraordinary and compelling" language in § 3582(c)(1)(A) to cover the exact same circumstances. In light of subsection (c)(1)(B), extraordinary and compelling must mean something other than a change in statutory penalties. *United States v. Fox*, 2019 WL 3046086 (D. Me. 2019) (recognizing that construing statute in this way would constitute an "end run" around the prescribed limits of § 3582).

Therefore, the First Step Act is should not be relevant to the question whether Tolliver can present "extraordinary and compelling reasons" warrant his release. While the First Step Act specifically now requires that 924(c)'s stacking provisions apply only after an intervening conviction, that provision is specifically not retroactive.  Congress thereby demonstrated its intent to leave 924(c) sentences imposed before the FSA as-is.

Moreover, changes in the law are not rare; they are not extraordinary or compelling reasons to reduce a sentence.  *Cf. United States v. Robinson*, No. 20-5929 (6th Cir. 2021)(Attached as Exhibit 2). In that case, the defendant argued, as Tolliver now does, that the changes to 924(c)'s stacking provision, and his efforts at rehabilitation, are extraordinary and compelling reasons to reduce his sentence.  The Judge Sixth Circuit affirmed, finding that the district judge did not abuse his discretion.

Even if this Court could exercise its discretion to grant Tolliver's motion, it should not.  Tolliver's circumstances favor denial of his motion.  He was facing an extremely large sentence, had the Government sought and succeeded in prosecuting Tolliver for all seven

13

gun smuggling trips.  And incorporating the Probation Officer's calculations for the non-924(c) counts could have exposed Tolliver to over 160 years' incarceration.  But the Government exercised prosecutorial discretion in charging and resolving Tolliver's case.  The Government agreed to resolve the case instead with a detailed Rule 11 Plea Agreement, and the Court sentenced Tolliver to 384 months – much less than Tolliver's maximum exposure.  Tolliver now seeks to entirely disregard this aspect of the case.  The Government should not in effect be punished for exercising restraint in the charging and disposition of Tolliver's case.

If the Government had successfully charged Tolliver with all seven trips today, each of those 924(c) counts would result in a sentence of five years each, totaling 35 years.  And that time would be consecutive to that for the other counts, which would add about ten more years.  Tolliver could have been facing 45 years' incarceration.

Tolliver wants this Court to sentence him as if he had been convicted today of the same counts he was charged with before the FSA. But the Government would very likely have not charged nor resolved the case as it did if it were brought today.  This type of speculation

contradicts the principle of finality of judgments and counsels this Court to, at least in this individual case, deny defendant's motion.

### B.    Sentencing Factors Favor Denial of Tolliver's Motion.

Even if a defendant is eligible for compassionate release, the district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A). As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

Tolliver's history and characteristics show that he is dangerous. He has been in trouble with the law virtually his entire adult life.  (PSR ¶ 43 – 61).  And the instant case is not the only time Tolliver had drugs and a firearm together.  Prior to this case, Tolliver was caught driving a car with 23 pounds of cocaine, 121 pounds of marijuana, and a gun. (PSR ¶ 49 – 52, 64). He admitted the gun was his.  *Id.* at ¶ 51.  Tolliver further stated that he had been transporting drugs for over half a year, but he then recanted.  He was shown leniency; he pleaded only to a

drug count.  (PSR ¶ 49 – 52, 64).  Despite being shown leniency in the past, Tolliver committed the gun and drug crimes in this case.  Tolliver has taken some classes and wrote a book in his efforts at rehabilitation.  As praiseworthy as that is, Tolliver's dangerousness, past history and circumstances outweigh his rehabilitative efforts.  And his history shows that leniency, which is what Tolliver now seeks in his motion, is not appropriate given his track record of escalating his criminal conduct after being show leniency in the past.

Tolliver also has a lengthy history of failure to appear and also has warrants out for his arrest.  (PSR ¶ 52, 60, 67, 68, 70).

Tolliver is not a person who had few options in life.  He earned a College degree.  (PSR ¶ 85).  But in spite of that advantage and the non-criminal options a college degree offers, he committed seven separate firearm and drug trafficking crimes in this case.  And he committed the other crimes previously summarized in the PSR.

The crimes Tolliver committed were serious.  Being the leader of a gun trafficking ring involving 60 guns with obliterated serial numbers – across state lines and an international border – is significant.  Those types of guns are utilized by criminals, as demonstrated by their use in

crimes in the country of Canada. (PSR ¶ 17, 18, 22).  Tolliver has demonstrated that he is a danger to the public.

Denying Tolliver's motion would, based on all the circumstances, promote uniformity of sentencings and also serve as a deterrent to Tolliver and others to not engage in the drug and gun crimes he committed.

The factors in 18 U.S.C. 3553(a) strongly weigh against compassionate release. For all these reasons, the Court should deny defendant's motion.

## Conclusion

Tolliver's motion should be denied.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

s/ *David J. Portelli*
DAVID J. PORTELLI
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9711
Date:  February 12, 2021    dave.portelli@usdoj.gov

17

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2021, I caused the foregoing

Motion to be filed with the ECF system, which will send notification of

such filing to the counsel of record.

Martin J. Beres
mjberes@gmail.com


*s/ David J. Portelli*
David J. Portelli
Assistant United States Attorney

18